[Civ. No. 17503. Second Dist., Div. One. Nov. 27, 1950.]

CONSOLIDATED PRODUCE COMPANY, LTD. (a Corporation), Appellant, v. GEORGE L. PIEPER, Respondent.

Richard J. O. Culver and Carl W. Barrow for Appellant.

James D. Garibaldi and Walter J. Little for Respondent.

632

DORAN, J.—The complaint herein charges that respondent Pieper while secretary and treasurer of appellant corporation, on June 10, 1940 "secretly and without authority and without the knowledge or consent or acquiescence of the plaintiff or its board of directors . . . withdrew $5,000.00 from the assets of the plaintiff, and with said sum of money, . . . purchased 2,500 shares of the preferred capital stock and 1,354 shares of the common capital stock of the Consolidated Produce Company, Ltd., from the estate of A. M. Klein and from Mrs. Jessie Klein and caused said shares of stock to be reissued by plaintiff in defendant's own name." It is then alleged that on April 1, 1946 the preferred stock was called for redemption, respondent receiving $26,250 therefor; that prior to redemption respondent had received $20,125 in dividends on said preferred stock. Respondent is alleged to have received $28,434 in dividends on the common stock so acquired, which common stock still stands in the respondent's name.

The complaint then alleges that respondent concealed the facts from the corporation and its directors who had no information concerning "such use of Plaintiff's funds by defendant until the month of March, 1947" when "an audit of the plaintiff's books of account revealed the aforementioned transaction." The prayer is that "defendant be declared the constructive trustee of said 1,354 shares of the common stock of the plaintiff for the use and benefit of the plaintiff," and that plaintiff recover all dividends paid to defendant together with interest, and the redemption price of the preferred stock paid to defendant. The answer contains a denial of the alleged fraud and pleads various statutes of limitation. There was also a cross-complaint to recover certain dividends withheld by appellant company.

After a trial consuming several days, the matter was submitted to the trial court upon briefs and judgment rendered in favor of the respondent, quieting title to the stock held in respondent's name, and awarding to respondent the sum of $33,850.00 with interest, representing withheld dividends. There was no motion for a new trial. It is the appellant's contention that the trial court's findings to the effect that no fraud was committed by respondent, that no unauthorized or illegal use of corporate funds was made, etc. are not supported by or justified by the evidence.

The record discloses evidence indicating that at the time the stock was purchased, Mr. Evans, president of Consolidated Produce Company recommended that respondent Pieper buy

the stock "for the sake of a little more prestige in view of the long service I had given the company." In order to purchase the stock Pieper in partnership with one Henry Rivers, borrowed $3,250 from the Bank of America which issued its cashier's check in that amount to respondent. Mr. Rivers also gave to respondent a personal check for $1,500.

The stock transfer was effected at respondent's office about noon on June 10, 1940. Pieper testified that as the seller's agent, Mr. Rubin, desired payment in one check, respondent secured a company check for $5,000 from President Evans, advising the president of the deposit in the cashier's drawer of the $3,250 cashier's check and the $1,500 Rivers check, the balance of $250 being drawn against respondent's salary. This company check (Plaintiff's Exhibit 6), was made out to California Bank, signed by President Evans and by Pieper as vice president and treasurer, and turned over to the seller's agent, delivery of the stock being made to Pieper. The matter was entered upon the corporate records, and under date of June 11, 1940 a receipt was issued by appellant corporation to Peiper for $4,750 "to account," with the notation, "2 cks 6/10/40 HLR 1500, Cashiers Ck. #3744948 3250.00." Nicholas Taube, cashier of appellant corporation, testified that the cash receipts were generally recorded the same day the cash was received but that "there were some days when you (the witness) weren't able to complete your work by noon and get all the cash entered and deposited."

The trial court found, and the record discloses substantial evidence in support thereof, that entries concerning Pieper's deposit of the checks with the company cashier and the issuance of the corporation check for $5,000 used in the stock purchase, were recorded in the corporation books more than three years prior to the filing of plaintiff's action in 1948. It was also found that audits were regularly made of the books; that Price, Waterhouse made an independent audit in 1941, and that "plaintiff had information from these statements that put it on inquiry as to the nature of the transactions" in question; that "the same books and records plaintiff investigated in 1947 existed in 1940."

There is also substantial evidence to justify the finding that "defendant made no secret withdrawals" of corporate funds, and that "The act of the defendant in using the accommodation check in June, 1940, was not done in secret and was not concealed." The trial court concluded that since the cause of action did not accrue within three years before

the commencement of the action, it was barred by the provisions of subdivision 4, section 338 of the Code of Civil Procedure.

It is conceded in appellant's brief that "There is some evidence relative to some of the findings but it is not enough to support the findings and the supporting evidence is so weak as to show an abuse of the discretion of the Trial Court." Appellant then asserts that "The only evidence to support findings in favor of the respondent was Pieper's testimony," and that "His testimony contained so many discrepancies, inconsistencies, contradictions and inherently improbable statements that it was not only the privilege, but the duty of the court to view all of his testimony with suspicion." Appellant then points out certain items of evidence which it is claimed necessitate a reversal of the judgment.

■ Appellant's attempt to make the present case an exception to the usual rule governing appellate review of questions of fact must fail. It is doubtless true that the record reveals certain conflicts in the evidence. It is likewise true that certain evidentiary facts, if believed by the trial court, may to some extent afford support to appellant's contentions that all was not as it should be in reference to the transaction. This, however, is but the usual situation met with in all contested litigation. The record in the instant case presents no exception to the rule.

The language used in *Isenberg* v. *Sherman,* 212 Cal. 454, 480 [298 P. 1004, 299 P. 528], is directly applicable to the present situation. The Isenberg action was brought by stockholders seeking an accounting after a sale of corporate assets alleged to have been fraudulently effected. Affirming a judgment of the trial court holding that there was no fraud, the reviewing court says: "It would serve no useful purpose to take up each point raised by appellants in reference to their theory of fraud and conspiracy. As is usual in such cases, the trial court was presented with two diametrically opposed theories, two different and opposed interpretations of certain acts and facts, and, on such conflicting evidence, the trial court decided in favor of respondents. Under such circumstances, our well-known rule as to findings based on conflicting evidence forbids interference with the judgment."

■ The trial court's findings and conclusions to the effect that no fraud or concealment had taken place, and that if any cause of action had ever existed, the same was barred by the three-year statute of limitation, finds adequate support

in substantial evidence. The credibility to be attached to Pieper's testimony, and the weight and credibility of all the voluminous documentary and testimonial evidence introduced, were questions to be determined by the trial court. No appellate interference is here warranted.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied December 18, 1950, and appellant's petition for a hearing by the Supreme Court was denied January 25, 1951.